SCOTT LANIN and LISA LANIN,

      **Plaintiff,**

  v.

THE BOROUGH OF TENAFLY and THE
TENAFLY BOARD OF EDUCATION

      **Defendants.**

Civ. No. 2:12-02725
(KM)(MCA)

**MEMORANDUM OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

      The Plaintiffs, Scott and Lisa Lanin of Tenafly, New Jersey, brought this 32-count Amended Complaint against the Borough of Tenafly ("Tenafly") and the Tenafly Board of Education ("BOE") regarding local ordinances passed limiting access to Downey Drive, the road adjacent to their home. This matter comes before the Court on the motion of BOE to dismiss the Amended Complaint ("Am. Compl.") for failure to meet the pleading requirements of Fed. R. Civ. P. 8; lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 39). For the reasons set forth below, this motion will be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

      Downey Drive is a public street running generally east and west. The Plaintiffs' home is located on the "lower Downey Drive" portion of the street, which runs from Engle Street to Smith School. Am. Compl. ¶¶ 94, 109-10. The

Plaintiffs' property is on the north side of the street. *Id.* ¶¶112, 115. The back yard of their property borders the Smith School parking lot. *Id.* ¶ 51.

The majority of the claims in the Amended Complaint relate to the effects of the traffic patterns and parking practices established by Tenafly Ordinances; the presence of students and vehicles on and around the Plaintiffs' property; flooding on their property from the Smith School Parking lot; and the construction of sidewalks on Lower Downey Drive.

Tenafly has adopted several traffic and parking measures related to Smith School. Traffic Ordinance 10-19, adopted in September 2010, made lower Downey Drive one-way during school hours (from 8am to 4pm). Am. Compl. ¶ 3. Ordinance 10-20 eliminated parking on the upper portion of Downey Drive. *Id.* ¶ 14. Ordinance 10-22 allowed a sidewalk to be constructed on the south side of Downey Drive in August 2010, creating a "Student Drop-Off Pick-Up Zone." *Id.* ¶¶ 34, 121. At the time the Amended Complaint was filed, a second sidewalk on the north side of the street was planned (it has since been completed).[1] Def. Br. (Docket No. 39-3) at 5.

The Plaintiffs also challenge the procedures by which the Ordinances and School Board Resolution were adopted. They allege that the Ordinances and Resolution were adopted after notice by publication in a newspaper, without "direct or actual" notice to the Plaintiffs. *Id.* ¶ 35. They further allege that the Defendants illegally conduct public business in secret by email or in closed session. *Id.* ¶ 50. The Plaintiffs allege that they have petitioned the Defendants under the New Jersey Open Public Records Act ("OPRA") for their emails concerning "the traffic, 'carpool', 'sidewalk' issues and related matters." *Id.*

Plaintiffs further allege that the BOE had a conflict of interest that tainted the official procedures. *Id.* ¶ 39. One of the BOE members, John Teall,

---

[1]    The Plaintiffs sought to enjoin the construction of the second sidewalk on the north side of the street (where Plaintiffs' house is located). (Docket No. 30). That application was denied by Judge Salas on July 31, 2012, and the sidewalk was completed. *See* Docket No. 34; Def. Br. at 5.

owns a home on Downey Drive. *Id.* Teall was allowed to participate in and vote on matters related to the street, even though he had a "direct personal and pecuniary interest." *Id.* Plaintiffs also object to the role of the Tenafly Mayor and Council in adopting the Ordinances because they did not follow their "usual procedures and standards." *Id.* ¶ 40.

In the process of considering options for the traffic flow around Smith School, the Plaintiffs allege, Tenafly rigged the solicitation of traffic consultant proposals and dictated the conclusions of the selected consultant, Urbana Consulting. *Id.* ¶ 41. BOE and Tenafly then conducted a "quasi-judicial hearing" at a public meeting to review Urbana's recommendations. *Id.* ¶ 42. The Plaintiffs attended the meeting and opposed the recommendations favored by the Defendants. *Id.* The Plaintiffs object to the form of the hearing, alleging that evidentiary rules and judicial procedures were not followed, and that the evidence and witnesses were not disclosed beforehand. *Id.* ¶ 44. The Mayor and Council allegedly considered unsworn testimony at the hearing and did not allow objections, voir dire of experts, or cross-examination. *Id.*

Finally, the Plaintiffs challenge Tenafly's snow removal and sidewalk repair ordinances, General Ordinances 12-3.1 and 12-3.2. *Id.* ¶ 46. When the plaintiffs purchased their home, there were no sidewalks adjacent to it. *Id.* ¶ 49. Under those Ordinances, Plaintiffs are now allegedly "solely responsible" for the expense of removing snow, ice, and debris from the sidewalk that now abuts their property. *Id.*

## II.   DISCUSSION

The BOE seeks dismissal of the Amended Complaint for failure to meet the pleading requirements of Fed. R. Civ. P. 8, lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). I **DENY** the motion to dismiss the entire Amended Complaint as presented. I will however, **GRANT** the motion to dismiss as to Counts 4, 6, 15, 16, 18, 20, 21, 22, 23, 25, 26, and 29.

## A. Failure to Meet Pleading Requirements of Fed. R. Civ. P. 8

The BOE argues that the Amended Complaint should be dismissed in its entirety for violating the "short and plain" pleading requirements of Fed. R. Civ. P. 8. Def. Br. at 1, 16. Rule 8 requires that a pleading contain "a short and plain statement" of (1) the grounds for the court's jurisdiction, and (2) the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a).

BOE's argument is not without merit. The Amended Complaint is 203 pages long, not including exhibits, and it contains 32 counts. The "Background" section alone comprises 126 pages. It would be difficult to call this Complaint "short" or "plain," and courts in this Circuit have dismissed such prolix complaints on Rule 8 grounds. *See In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996); *Tillo v. Northland Group*, 456 Fed. App'x. 158 (3d Cir. 2012); *Jackson v. Rohm & Hass Co.*, 2008 U.S. Dist. LEXIS 117402, *4 (E.D. Pa. Dec. 17, 2008). Nevertheless, the complaint has already been amended once, further amendment might serve only to delay matters, and some of the counts adequately allege causes of action. I will therefore exercise my discretion to deny the BOE's motion on this ground and proceed to consider the legal sufficiency of the various causes of action.

## B. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

The BOE moves to dismiss the Amended Complaint for lack of subject matter jurisdiction, or because it does not state a claim upon which relief can be granted. Def. Br. at 20. Those Rule 12(b)(1) and 12(b)(6) grounds will be considered together, count-by-count.[2]

Federal Rule of Civil Procedure 12(b)(1) permits a party to bring a motion to dismiss for lack of subject matter jurisdiction, including lack of standing. *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007); *Coastal Outdoor*

---

[2]    Only BOE has moved to dismiss; the Borough of Tenafly has answered the Amended Complaint. The rulings herein may apply to the Borough, however, as the context dictates.

*Advertising Group, LLC v. Twp. of Union N.J.*, 676 F. Supp. 2d 337, 343 (D.N.J. 2009). Rule 12(b)(1) challenges may be either facial or factual attacks. See 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual challenge, however, attacks subject-matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. Thus a factual jurisdictional proceeding may not occur until the plaintiff's allegations have been controverted. *Id.* at 891 n. 17. For purposes of this motion to dismiss, the Defendants' jurisdictional arguments will be treated as facial attacks.

In a challenge to a complaint pursuant to Fed. R. Civ. P. 12(b)(6), the defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-

plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## 1. The Motion to Dismiss is Denied as to Counts 2, 3, 10, 17, and 32.

The Amended Complaint alleges claims against the BOE and Tenafly for violations of the Fourteenth Amendment procedural due process clause (Counts 2 and 3); conspiracy under 18 U.S.C. § 1983 (Count 10); breach of fiduciary duty (Count 17); and *ultra vires* action (Count 32). When all reasonable are inferences drawn in favor of the Plaintiffs, *Phillips*, 515 F.3d at 231, these counts of the Amended Complaint set forth sufficient allegations to state a claim. *See Iqbal*, 556 U.S. at 678. Whether such claims can be established, of course, remains to be seen.

### *a.* Fourteenth Amendment Procedural Due Process (Counts 2 and 3)

The Plaintiffs allege that Tenafly and the BOE violated their Fourteenth Amendment procedural due process rights to adequate notice (Count 2) and a fair hearing (Count 3). Am. Compl. ¶¶ 1060 – 1067. To state a procedural due process claim, Plaintiffs must establish (1) that they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) that the procedures available to them did not provide due process of law. *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011).

Count 2, the fair notice claim, alleges that Tenafly and the BOE deprived them of "actual notice" regarding matters "directly or indirectly" affecting their

home, the surrounding area, and Downey Drive. Am. Com. ¶ 1065. In particular, Plaintiffs challenge the notice given for meetings of the Tenafly Mayor and Council regarding Ordinances 10-19 and 10-20. *Id.* ¶¶ 245 – 248. They also allege that there may have been meetings held, and ordinances and resolutions adopted, that are currently unknown to them and affect their rights. *Id.* ¶ 1033; *see also* ¶¶ 385 – 386. Plaintiffs seek declaratory and injunctive relief, declaring Ordinances 10-19, 10-20, Resolution A-3 and the adoption of the Urbana Consulting Report to be void and invalid, enjoining the enforcement of those ordinances or resolutions, and directing the Defendants to provide "direct and actual notice" of any past or future ordinances or resolutions that "impact, impair, or interfere" with their home. *Id.* ¶ 1064.

To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Pursuant to the New Jersey Open Public Meetings Act ("OPMA"), constructive notice by newspaper publication constitutes "adequate notice" for public meetings. N.J.S.A. 10:4-6 *et seq.*[3] Persons may request individualized notice of any regular, special, or rescheduled meeting. N.J.S.A. 10:4-18, 10:4-19. Tenafly responded to requests from the Plaintiffs under the Open Public Records Act ("OPRA") with "Proof of Publication Affidavits" purportedly showing published notice from The Record newspaper (known as the "Bergen Record") on 6/15/2010 and 6/27/2010. Am. Comp. ¶ 245. The Plaintiffs allege that even if this notice was provided, it was not "reasonably calculated" to, and did not, give them an adequate opportunity to respond and object. *Id.* ¶ 1064.

---

[3]     Pursuant to N.J.S.A. 10:4-8(d), "adequate notice" is defined in part as written advance notice that shall be (1) "prominently posted in at least one public place reserved for such or similar announcements; (2) provided to at least two (2) newspapers with the greatest likelihood of informing the public body of the meeting; and (3) filed with the clerk of the municipality."

Although notice by publication satisfies New Jersey state law, it does not necessarily follow that it satisfies the due process clause. To succeed on this claim, the Plaintiffs will have to show, *inter alia,* that they lacked actual notice; that this constructive notice fails the *Mullane* standard; and that some cognizable right was affected by the lack of direct notice. *See* 339 U.S. at 314.

The Plaintiffs also allege that a June 2011 evidentiary hearing conducted by Tenafly's Mayor and Council regarding the acceptance of the Urbana Report violated procedural due process. Am. Compl. ¶¶ 924 – 926. At that hearing, the Council allegedly considered evidence, including testimony from members of the BOE, which was not disclosed to the Plaintiffs or made part of the record. *Id.* ¶ 930. The Mayor and Council heard statements from the BOE, the HSA parent organization, and the Principal of the Smith School. *Id.* ¶ 931. The Plaintiffs further allege that the hearing was conducted *ultra vires* insofar as it adjudicated the Plaintiffs' legal rights. *Id.* ¶¶ 937 – 941. The Plaintiffs attended the meeting, but contend that that should have been allowed to cross-examine witnesses and conduct *voir dire* of the traffic consultant, Urbana Consulting. *Id.* ¶ 948.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A due process claim under *Mathews* requires the balancing of three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Id.* at 335. Assuming *arguendo* that the Plaintiffs have a property interest in an implied easement to the public street, the Court must determine whether the process afforded to the Plaintiffs in restricting that right failed to meet the due process test under *Mathews*.

Whether the evidentiary hearing fell short of due process standards cannot yet be determined, but the Amended Complaint states a claim that it did. The motion to dismiss Counts 2 and Count 3 will therefore be denied.

### b. Conspiracy Under 18 U.S.C. § 1983 (Count 10)

Count 10 alleges that the BOE and Tenafly entered into an unlawful conspiracy to commit Constitutional torts against the Plaintiffs in violation of 18 U.S.C. § 1983. Am. Compl. ¶ 1124. In order to state a § 1983 conspiracy claim, the plaintiff must "make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events" to deprive the plaintiff of a federally protected right. *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 402 (D.N.J. 2008) (citing *Fioriglio v. City of Atlantic City*, 996 F.Supp. 379, 385 (D.N.J.1998), *aff'd mem.* 185 F.3d 861 (3d Cir. 1998)); *see also Green v. City of Paterson*, 971 F. Supp. 891, 909 (D.N.J. 1997), *aff'd* 770 F.2d 1070 (3d Cir. 1985).

The Plaintiffs allege that through their formal and informal relationship and "Joint Use Committee," the BOE and Tenafly have entered into an agreement to "try to accomplish a common and unlawful plan that violated, and continues to violate, the plaintiffs' constitutional and protected property rights." Am. Compl. ¶ 1125. Elsewhere, they state that members of the BOE and Tenafly made joint decisions, and coordinated their actions regarding the Smith School "carpool" traffic, the drop-off and pick-up zone, and the right of way. *Id.* ¶ 440 – 441. These allegations are far from detailed, but they plausibly suggest that the Defendants acted together.

Because I find that some of the Plaintiffs' substantive Constitutional claims survive a motion to dismiss, it is appropriate to deny the dismissal of this conspiracy claim, which essentially adds the element of acting in concert. The motion to dismiss Count 10 will be denied.

### c. Breach of Fiduciary Duties (Count 17)

Count 17 alleges that the Defendants have breached their fiduciary duties to the Plaintiffs and the residents of Tenafly. Am. Compl. ¶ 1148. More specifically, they allege that the BOE is liable for a member's conflict of interest. *See* Am. Compl. ¶¶ 1149, 1152; discussion at pp. 17-19, *infra.*

In New Jersey, public officials owe a fiduciary duty to "display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty, and integrity." *Driscoll v. Burlington-Bristol Bridge Co.*, 86 A.2d 201, 221, 8 N.J. 433 (2006) (citations omitted). Public officials must be "impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly." *Id.* A citizen may bring suit in his or her name to enforce these obligations of public officials. *Id.* (citing *Tube Reducing Corp. v. Unemp't Comp. Comm'n*, 1 N.J. 177, 181, 62 A.2d 473, 5 A.L.R. 2d 855 (1948); *Waszen v. City of Atlantic City*, 1 N.J. 272, 276, 63 A.2d 255 (1949); *Haines v. Burlington Cnty Bridge Comm'n*, 1 N.J.Super. 163, 170 – 173, 63 A.2d 284 (N.J. Sup. Ct. App. Div. 1949)). If the court finds that the public officials breached their fiduciary duties in conducting a transaction, that transaction may be voided as contrary to public policy. *Id.* at 222; *Manning Eng'g, Inc. v. Hudson Cnty Park Comm'n*, 74 N.J. 113, 123, 376 A.2d 1194, 1199 (N.J. 1977).

This Count sets forth a cause of action under New Jersey law. The motion to dismiss is therefore denied as to Count 17.

### d. Injunction Against Ultra Vires Action Regarding the Traffic Ordinances (Count 32)

In Count 32, the Plaintiffs seek an injunction prohibiting the Defendants from enforcing the traffic ordinances and declaring them to be void, invalid,

and *ultra vires*. Am. Compl. ¶ 1220. One of the alleged bases for this Count is that Tenafly violated the Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD") as applicable under N.J.S.A. 39:4-8 and 39:4-197. *Id.* ¶¶ 1229 – 1230. Together, these provisions allow a municipality to pass ordinances designating one way streets and regulating parking on streets, consistent with the standards of the MUTCD, without approval of the commissioner.[4] N.J.S.A. 39:4-8, 39:4-197. *See generally Casella v. Twp. of Manalapan,* No. L-3194-08, 2011 WL 1466161, *5 (N.J. Sup. Ct. App. Div. April 19, 2011) (placement of stop signs); *Rivera v. Southern R. Co. of New Jersey,* 698 A.2d 560, 304 N.J. Super 117 (N.J. Sup. Ct. 1996) (traffic controls for street and highway construction, maintenance, utility and incident management operations). One section of the MUTCD requires that municipalities maintain "good public relations" by, *inter alia,* considering the needs of abutting property owners and making "appropriate accommodations." MUTCD § 6B.01(7).[5]

The Defendants contend that they did adequately consider the needs of the Lanins and other abutting property holders, but the Amended Complaint adequately alleges that Defendants did not. The motion to dismiss Count 32 will therefore be denied to allow for further factual development. Because I am not dismissing this Count, I do not reach the other statutory and equitable grounds asserted therein.[6] *See* Am. Compl. ¶¶ 1238 – 1266.

---

[4]  Available at http://mutcd.fhwa.dot.gov/htm/2009r1r2/html_index.htm.

[5]  The Plaintiffs cite 6C.01(11), which provides that "[p]rovisions for effective continuity of railroad service and acceptable access to abutting property owners and businesses should also be incorporated into the [temporary traffic control] planning process." I take this citation to be an error.

[6]  The Plaintiffs cite numerous other statutory and equitable bases for relief under this Count: N.J.S.A. 39:4-197(1)(b) (limiting municipality from passing ordinances restricting commercial traffic); N.J.S.A. 39:4-85.1 (providing that a vehicle on a one-way street only be driven in the designated direction); N.J.S.A. 39:4-8(b)(3) (incorrectly cited as 39:4-8(3)) (requiring that the municipal engineer certify to the municipality that any designation of erection of signs or placement of pavement markings has been approved after investigation of the circumstances); and public policy. I do not find

## 2. Counts 4, 6, 15, 16, 18, 20, 21, 22, 23, 25, 26, and 29 are Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

The remaining Counts against the BOE lack subject matter jurisdiction, fail to state a claim for relief, or both, and will be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### a. Fourteenth Amendment Equal Protection (Count 4)

Count 4 asserts a claim under 18 U.S.C. § 1983 alleging that the BOE and Tenafly deprived Plaintiffs of their right to equal protection of the laws under the Fourteenth Amendment. Am. Compl. ¶ 1068. They assert that they are part of a "broad protected class" including "all of the residential property owners in the Borough of Tenafly" entitled to equal treatment as to their "freedom of movement, egress and ingress and access to their homes, payment of a proportionate share of real estate and school taxes." *Id.* They also assert they are members of a "narrower, protected class of similarly situated residential property owners on East Hill." *Id.* ¶ 1072. The Plaintiffs allege that they and eight other households, who comprise this protected class, have been discriminated against through "intentional different treatment" by the Defendants, including the adoption of the Urbana Consulting Report, Ordinances 10-19, 10-20, and 10-22, and Resolution A-3. *Id.* ¶¶ 1073, 1075.

The Plaintiffs have failed to state a cognizable Equal Protection claim under Section 1983. To state such a claim, the plaintiff must allege facts showing the existence of purposeful discrimination. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). The plaintiff must have received different treatment from that received by other individuals similarly situated. *Id.* And in such a Section 1983 case, the plaintiff

---

these additional bases for relief particularly convincing, but because I uphold the cause of action under the MUTCD and NJSA 39:4-8 and 39:4-197, this Count will survive the motion to dismiss.

must allege that a state actor intentionally discriminated against him because of his or her membership in a protected class. *Lande v. City of Bethlehem*, 457 Fed. App'x 188, 192 (3d Cir. 2012) (citing *Chambers*, 587 F.3d at 196). Classically, but not exclusively, such a protected class may be a racial, ethnic or religious minority. Neither the resident property holders of Tenafly generally nor the property holders on Downey Drive constitute a legally recognized protected class of this kind.

Plaintiff may nevertheless attempt to assert what is sometimes called a "class of one" theory. *Lande*, 457 Fed. App'x at 193. A "class of one" Equal Protection claim asserts that a person was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). The Amended Complaint does not set forth such a claim.

The narrowest possible group of "similarly situated" individuals consists of residents of Downey Drive. Plaintiffs do not seem to be claiming that they were treated disparately vis-à-vis their Downey Drive neighbors. Indeed, Plaintiffs allege that eight other households on lower Downey Drive were fellow sufferers from, *e.g.,* selective enforcement of rights of way, imposition of unwanted sidewalks and the attendant duties to clear them of snow and ice, and facilitation of trespass to their properties. *Id.* ¶ 1072-73. The Amended Complaint alleges no facts suggesting that Plaintiffs, when compared to their near neighbors, were exposed to these conditions on any disparate basis – let alone that such disparity was irrational.

Rather, the Plaintiffs seem to be alleging that they (perhaps in common with their neighbors) were treated disparately with respect to other residents of

the town. But the Plaintiffs fail to allege plausibly that any difference in treatment lacked a rational basis. The measures complained of, on their face, have their impact by virtue of the location of the Downey Drive property and its proximity to the Smith School. The fact that other Tenafly residents' properties are *not* located near the Smith School suggests an obvious rational basis for any disparate impact. The Amended Complaint itself repeatedly cites the minutes of the BOE August 24, 2010 meeting,[7] and those minutes state that the recommendations for sidewalks, one-way traffic, changes in pick-up and drop-off locations, and parking changes on Downey Drive were motivated by safety concerns with respect to the school. Def. Motion to Dismiss Exhibit A (Docket No. 39-2) at 3 - 4; Am. Compl. ¶¶ 192, 337, 420, 423 – 427. Such community safety concerns, particularly those arising in the environs of a school, would constitute a rational basis for the Defendants' taking action with respect to Downey Drive.

We are, of course, at the motion to dismiss stage. This stage of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). A sufficient allegation that Defendants' stated motivations were not the real ones might support a cause of action. On that score, however, Plaintiffs do not offer anything sufficiently factual or plausible. The Amended Complaint says that the Defendants were motivated by "indifference, ill will, political expediency and/or an attempt to gain public favor." Am. Compl. ¶ 1074. These are conclusions or characterizations, not facts. The mere fact that the Town made changes to traffic, parking and pedestrian facilities in a location adjacent to a school, rather than elsewhere in town, does not in itself suggest an irrational disparity. To make out an equal protection claim, a plaintiff in this context would have to

---

[7]     Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. The court may, however, consider a document "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and emphasis omitted).

allege something factual and reasonably specific. The Amended Complaint, despite its length, does not do this.

Count 4 fails to meet the test of *Twombly/Iqbal*, and will be dismissed pursuant to Rule 12(b)(6).

### b. Fourteenth Amendment Substantive Due Process (Count 6)

Count 6, citing 42 U.S.C. § 1983, alleges that the Defendants violated Plaintiffs' substantive due process rights under the Fourteenth Amendment to "freedom of movement, egress and ingress, Free Speech, and Due Process" and interfered with the Plaintiffs' property rights. Am. Compl. ¶ 1089. This Count fails to plead a claim of deprivation of a fundamental right.[8]

The Amended Complaint's reference to movement, egress and ingress could be deemed a claim of denial of the right to intrastate travel. That right and its possible sources are exhaustively discussed in *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990) (recognizing right to intrastate travel, subject to reasonable regulation). But the Amended Complaint fails to plausibly plead a deprivation of that right. There are allegations to the effect that the one-way designation cuts off the most direct route, and requires the Plaintiffs to take a more roundabout route, to leave their neighborhood during school hours. *See* Am. Compl. ¶ 164, 237 – 239. Plaintiffs state that they feel compelled to "remain in their home and delay their departure" to avoid school traffic. Am. Compl. ¶¶ 275 – 276. They do not allege a single instance of actually being prevented from entering or leaving their home or neighborhood. Nor is anyone attempting to prohibit or prevent them from traveling. Traffic, even if it can be attributed to poor public planning, is not a deprivation of a fundamental right. Nor does it violate any fundamental right to require that auto traffic, at certain

---

[8]    Plaintiffs separately allege a free speech claim against the Borough in Count One. Am. Compl. ¶ 1050. Because that Count was not alleged against the BOE, and Count 6 contains no distinct free speech allegations, it is not considered here.

times of day, take a route that turns out to be more circuitous when viewed from the perspective of a particular property owner's driveway. Probably every traffic regulation inconveniences someone, while easing the path of someone else. The factual allegations of this complaint do not establish that such an inconvenience, incident to the control of traffic around a school, has burdened the fundamental right to travel.

The remaining "fundamental right" allegations against the BOE also fail to establish a cognizable violation. The Plaintiffs allege no unconstitutional deprivation of property. No condemnation of property, for example, is alleged, and nothing about the alleged changes to the Downey Street area rise to the level of shocking the judicial conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (substantive due process violation under Section 1983 for deprivation of property interest must "shock the conscience" to be actionable); *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (holding that allegations that township "maligned and muzzled" plaintiffs, applied standards not applied to similar properties, delayed permits and approvals, improperly increased tax assessments, and pursued unannounced and unnecessary enforcement actions in denying zoning requests failed to "shock the conscience").

The allegations regarding the procedures in connection with hearings and other proceedings are more properly considered as alleged violations of procedural due process, and I have upheld them under that heading. *See* pp. 6 – 8, *supra*; Am. Compl. ¶ 1094. Couched as violations of substantive due process, they are superfluous.

In sum, the Plaintiffs have failed to allege sufficient facts in support of any substantive due process claim. Count 6 will be dismissed pursuant to Rule 12(b)(6).

### c. Construction in Protected Riparian Zone (Count 15)

Count 15 alleges that Tenafly submitted a false application with the New Jersey Department of Environmental Protection (NJDEP) for construction in a protected riparian zone, in violation of the Flood Hazard Area Control Act ("FHACA"), N.J.S.A. 58:16A-50 *et seq.* Plaintiffs allege that the Town failed to obtain necessary government approvals for construction of a "concrete platform" (*i.e.*, a sidewalk) on the south side of Lower Downey Drive. They further allege that the Town has threatened to build (and now has built) another sidewalk abutting Plaintiffs' property on the north side of Downey Drive. Am. Compl. ¶¶ 1139 – 1144. This claim fails on its face because there is no private right of action under FHACA. Only the NJDEP may seek penalties or an injunction for violations of the FHACA. N.J.S.A. 58:16A-63; N.J.A.C. 7:13-19.1. Count 15 will therefore be dismissed.

### d. Conflict of Interest in Violation of N.J.S.A. 18A:12-24 (Count 16)

Count 16 alleges that the BOE and Tenafly have a conflict of interest based on the involvement of school board member John Teall. Plaintiffs cite a New Jersey statute that prohibits a member of a Board of Education from acting in an official capacity in any matter where "he or a member of his immediate family has a personal involvement that is or creates some benefit to the school official or member of his immediate family." N.J.S.A. 18A:12-24(c).[9]

---

[9]     Generic or diffuse conflicts are not covered. Thus a school official will not be deemed to have a conflict of interest if "by reason of his participation in any matter required to be voted upon, no material or monetary gain accrues to him as a member of any business, profession, occupation or group, to any greater extent than any gain could reasonably be expected to accrue to any other member of that business, profession, occupation or group." N.J.S.A. 18A:12-24(h). The statute also would not appear to apply to Plaintiffs' complaint of Tenafly's "usurpation" of the role of the planning and zoning boards, and Tenafly's "policy of acting as applicant and/or arbiter over matters concerning its joint plans" with the BOE. Am. Compl. ¶ 1146. Tenafly, however, has not moved to dismiss the Complaint.

Board member John Teall allegedly lives at 110 Downey Drive, not far from the Smith School. Am. Compl. ¶¶ 31, 39, 79. Plaintiffs describe their property as being on "Lower Downey Drive" and Teall's property as being on "Upper Downey Drive." *Id.* ¶ 270. They allege that "[d]espite his direct personal and pecuniary interest in the use of the alleged right of way and traffic issues, [Teall] was allowed to participate in and vote on matters which directly affect" both his and the Plaintiffs' homes. *Id.* ¶ 39. The Amended Complaint alleges that the BOE meeting minutes from August 24, 2010, confirm that Teall was in attendance. The minutes also allegedly note that the BOE worked with an "unidentified representative from residents on Downey Drive" to improve procedures in the morning and afternoon. *Id.* ¶¶ 338 – 339. At that meeting, the BOE adopted Resolution A-3 to support Tenafly in creating a sidewalk on Downey Drive. *Id.* ¶ 420.

Whatever the merits of this state-law claim, it must be dismissed for failure to exhaust administrative remedies. In New Jersey, the Ethics Commission is responsible in the first instance for resolving complaints alleging unethical conduct of members of a local school board. N.J.S.A. 18A:12–29; *see also Dericks v. Schiavoni*, No. 4-5/09A, 2011 WL 2304195 (N.J. Sup. Ct. App. Div. June 1, 2011). When a complaint is filed against a member of a local school board, the Ethics Commission "[s]hall determine whether the conduct complained of constitutes a violation of ... th[e] Act or the code of ethics, or whether the complaint should be dismissed." N.J.S.A. 18A:12–29(c). The Ethics Commission's decision shall be in writing and shall state its findings of fact and conclusions of law. *Id.* Such an administrative resolution of controversies and disputes arising under the school laws is considered a final agency action under the state Administrative Procedures Act. *Id.*

Only then is judicial review appropriate, by means of a direct appeal to the Appellate Division of the Superior Court. N.J.S.A. 18A:6-9.1. *See, e.g., Bd. of Educ. Of City of Sea Isle City v. Kennedy*, 922 A.2d 805, 810 (N.J. Sup. Ct.

App. Div. 2007) (stating "arbitrary and capricious" standard of review for reviewing agency decision regarding school board member), *affirmed*, 951 A.2d 987, 999 – 1000 (N.J. 2008); *In re Suspension of Kight*, 2008 WL 351240 (N.J. Sup. Ct. App. Div. Feb. 11, 2008) (affirming Commission's suspension of board member); *Fisher v. Hamilton*, 2013 WL 3716880 (N.J. Sup. Ct. App. Div. July 17, 2013) (reversing Commission determination for reinstatement of the complaint; court did not retain jurisdiction).

Count 16 will therefore be dismissed on these procedural grounds. I note, however, that Count 17, which is not being dismissed, would appear to cover much of the same ground.

### e. Breach of Duty to Ensure Child's Safety (Count 18)

Count 18 alleges that the Defendants have breached their duty to ensure the "safety and supervision of children under the conditions the defendants have created" in the pick-up/drop-off zone and by the Creek. Am. Compl. ¶ 1155. Because Plaintiffs do not have standing to bring this claim, it will be dismissed pursuant to Rule 12(b)(1).

Any such duty is owed to the children attending Smith School and perhaps to their parents, but in any event not to these adult Plaintiffs. *See Jerkins v. Anderson*, 191 N.J. 285, 296 (2007) (school has duty to monitor students for safety until dismissal). In addition, the Plaintiffs point to no case expanding the school's duty of reasonable care to require that the BOE supervise the children off school premises and prevent them from trespassing on private property. *See* Am. Compl. ¶ 1156.

The claimed duty, to the extent it may exist, is not owed to the Plaintiffs. Count 18 will be dismissed for lack of standing.

### *f.* Injunction Against Violations of the Open Public Meetings Act (Count 20)

Count 20 alleges that the defendants have engaged in a pattern of violations of the New Jersey Open Public Meetings Act ("OPMA") by conducting public business in secret by email or in closed session. Am. Compl. ¶ 1186; N.J.S.A. 10:4-6. Plaintiffs request injunctive relief against future violations. N.J.S.A. 10:4-16. New Jersey has interpreted OPMA to allow injunctive relief if "a pattern of non-compliance" has been demonstrated. *McGovern v. Rutgers*, 211 N.J. 94, 112, 47 A.3d 724, 734 (2012). The Plaintiffs fall short, however, of alleging facts establishing such a pattern of secret meetings or deliberations.

The Plaintiffs make numerous conclusory allegations regarding the Defendants' "secret" communications and deliberations behind closed doors. *See e.g.* Am. Compl. ¶ 50. The Plaintiffs find it suspicious that, despite their requests, Defendants have not furnished copies of emails concerning "traffic, 'carpool,' sidewalk issues and related matters." *Id.* ¶ 50, 387 - 405. The Defendants allegedly denied Plaintiffs' request because they were unwilling to search through hundreds of thousands of emails. *Id.* The Plaintiffs do not point to any particular information, testimony, or influence that they believe would be contained in these emails.

The Plaintiffs assert that the Defendants received a preliminary report from Urbana Consulting regarding the disputed traffic and sidewalk issues, and that the report was kept "secret from plaintiffs." *Id.* ¶ 854. However, the Amended Complaint itself establishes that the recommendations of that report were discussed at an open joint meeting of Tenafly and the BOE in May 2011. *Id.* ¶¶ 43, 856. Although the Plaintiffs did not attend this meeting, they allege that "other residents" did attend. *Id.* ¶ 859 – 861. Indeed, it was based on reports from those residents that Plaintiffs alleged that Urbana Consulting representatives "professed ignorance" about traffic patterns. *Id.*

Overall, the allegations of Count 20 are speculative and conclusory. The reader is to infer, for example, that, because email was employed, there were secret deliberations between BOE and Council members regarding the subject-matter of this complaint, or that because the Defendants reviewed the Urbana report before the public meeting, illegal secret deliberations occurred. *See id.* ¶¶ 396 – 399. These allegations, even viewed in the light most favorable to the Plaintiffs, do not establish secret proceedings, let alone a "pattern" of secret proceedings. They fall short of establishing a cognizable claim for injunctive relief under OPMA. Count 20 will be dismissed for failure to state a claim.

### g. Attractive Nuisance (Count 21)

Count 21 alleges that the Defendants "created or perpetrated" attractive nuisances near or around their property in the form of the creek, playground, student pick-up/ drop-off zone, and sidewalk. Am. Compl. ¶¶ 1170 – 1171. In addition to compensatory damages, they seek an injunction requiring the Defendants to remove the playground and all "sidewalks or platforms that connect to the Creek," to supervise children in the creek area, and to halt dangerous construction near the creek. *Id.* ¶¶ 1171.

Under New Jersey law, the attractive nuisance doctrine does not apply to public entities. *Lopez v. N.J. Transit*, 295 N.J. Super 196, 203, 684 A.2d 986, 990 (App. Div. 1996); *Kolitch v. Lindedahl*, 100 N.J. 485, 492, 497 A.2d 183, 187 (1985). The cause of action to which this claim comes closest is a claim for a dangerous condition on a public entity's property, which must be brought under the New Jersey Tort Claims Act ("TCA"). *Kolitch*, 497 A.2d 183 at 187 (citing *Brown v. Brown*, 86 N.J. 565, 575, 432 A.2d 493 (1981)).

To state a claim for a dangerous condition, a plaintiff must allege that the property was in a dangerous condition at the time of the injury; that the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred; and that a public employee created the dangerous condition

or that the public entity had notice in time to protect against the condition itself; and an injury was proximately caused by the dangerous condition. N.J.S.A. 59:4-2. Even when the claim is for a declaratory judgment or injunction, standing requirements dictate that the issue presented must be more than an "abstract, hypothetical or contingent" one. *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) (quoting *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). Finally, there can be no recovery under the statute unless the action or inaction on the part of the public entity in protecting against the condition was "palpably unreasonable." *Id.*

Certain of these allegations—the notion that a school playground constitutes an attractive nuisance, for example—may lack plausibility. I need not reach the reasonableness of any action or inaction by the Defendants, however, because the Plaintiffs have failed to plead an injury or danger to themselves as required under N.J.S.A. 59:4-2. Without an adequate allegation of actual or threatened injury proximately related to the alleged dangerous condition, Plaintiffs lack standing and there is no cause of action under the statute. *Id.; Furey v. Cnty of Ocean*, 272 N.J. Super 300, 309, 641 A.2d 1091, 1096 (N.J. Super. Ct. App. Div. 1994). Therefore, Count 21 will be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

### *h.* Injunction Against Threatened Violation of ADA (Count 22)

The Plaintiffs seek to enjoin the construction of a second sidewalk, adjacent to their property on Downey Drive, claiming that it threatens to violate the Americans with Disabilities Act ("ADA"). When the Amended Complaint was filed, the second sidewalk had not yet been completed, *see* Am. Compl. ¶¶ 1173 – 1175, but now it has. The BOE does not address this Count in its motion to dismiss, but the completion of the second sidewalk has mooted the claim, depriving the Court of jurisdiction. *See* Def. Br. at 5; *Weiss v. Regal*

*Collections*, 385 F.3d 337, 340 (3d Cir. 2004) (court no longer has subject-matter jurisdiction when claim is moot because its jurisdiction is limited to "cases and controversies" under Art. III of the Constitution). Mootness aside, the Plaintiffs have not asserted any basis for standing under the ADA because they have failed to allege a cognizable injury to themselves. *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 152 (3d Cir. 1999) (injury allegations are "necessary elements" of the plaintiffs' case).

Because Count 22 is moot and does not allege an injury, it will be dismissed pursuant to Rule 12(b)(1).

### *i.* **Flooding – Damages and Injunction (Count 23)**

The Plaintiffs allege that the BOE's parking lot "routinely floods" into their backyard, and that the Defendants have breached their duty to maintain proper working drainage, to take precautions for managing storm water, and to avoid flooding. Am. Compl. ¶¶ 1178 – 1180. The flooding, they allege, is "interfering with the plaintiffs' use and enjoyment of their property and diminishing its value." *Id.* ¶ 764.

The Plaintiffs do not specify the statutory or common law basis for this cause of action, which seeks both damages and an injunction. *Id.* ¶ 1181. Their claim for damages could potentially be stated as a New Jersey Tort Claims Act ("TCA") claim, although the Plaintiffs would then face some procedural hurdles.[10] In support of the injunctive relief, Plaintiffs may have intended to plead a continuing nuisance claim. *See Sheppard v. Twp. of Frankford*, 617

---

[10] The BOE argues that the Plaintiffs failed to notify them of the claim as required under the TCA. Def. Br. at 51. Under the TCA, the suit will be dismissed if the claimant did not provide notice of the claim within 90 days of the accrual of the action. N.J.S.A. 59:8-8; *Davis v. Twp. Of Paulsboro*, 371 F.Supp. 2d 611, 617- 18 (D.N.J. 2005). A New Jersey Superior Court Judge may, at his or her discretion, extend the notice period to one year from the claim's accrual if the public entity has not been prejudiced. NJSA 59:8-9.

A.2d 666, 699 (N.J. Super. Ct. App. Div. 1992).[11] The Amended Complaint fails to specify either of these potential causes of action.

Regardless of how the claim is characterized, however, the Plaintiffs have not factually alleged that the Defendants have caused, or are responsible for, flooding on their property. The Amended Complaint itself notes that Tenafly has "well publicized" flooding problems. *Id.* ¶ 754. According to a report from the Tenafly Environmental Commission, "[d]rainage and storm water runoff issues are particularly sensitive to the borough, as Tenafly is part of the Tenakill Brook Watershed." *Id.* ¶ 755. The Amended Complaint also explains that Tenafly has taken actions to improve the flooding issues in the town, digging up entire streets near Plaintiffs' home and replacing or renovating underground drainage systems. *Id.* ¶ 757. Plaintiffs also allege that the Mayor came to their property to view "water, leaves and debris" that entered their property under their back fence. *Id.* ¶ 776.

The missing piece is a plausible allegation that Defendants' actions have caused, or that Defendants as public entities are legally responsible for, the flooding. To say that flooding occurs on Plaintiffs' property, under these circumstances, does not support a plausible inference that, for example, something about Defendants' management of the nearby school property caused it. As the Amended Complaint acknowledges, flooding is a pervasive problem in the Borough. These mixed allegations do not establish that the Defendants are in any way causing or responsible for this particular flooding. The allegations in the Amended Complaint thus fail to establish any cognizable

---

[11]   In considering an injunction, the Court would look at: (1) the character of the interest to be protected; (2) the relative adequacy of the injunction to the plaintiff as compared with other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the comparison of hardship to plaintiff if relief is denied, and hardship to defendant if relief is granted; (6) the interests of others, including the public; and (7) the practicality of framing the order or judgment. *Sheppard*, 617 A.2d at 699 (citing Restatement (Second) of Torts § 936 (1977)).

claim for an injunction or for damages under the TCA. Count 24 will be dismissed for failure to state a claim.

### j. Trespass (Count 25)

Count 25 alleges that the Defendants "purposefully and knowingly" interfered with Plaintiffs' property, right of way and easement to use the abutting public street. Am. Compl. ¶ 1193. The Defendants allegedly created artificial and man-made conditions that led children "under the care and responsibility of defendants" to "routinely" trespass on the Plaintiffs' property. *Id.* ¶ 1194 – 1196. The trespass claim encompasses two essential allegations: (1) that the traffic ordinances and parking policy constitute a trespass on the plaintiffs' right of way and easement to use the public road, and (2) that children from the school trespass on the Plaintiffs' land while playing in the creek and on the school playground. *Id.* ¶¶ 265, 725 – 739. The Plaintiffs have not alleged an actionable trespass claim.

First, the Defendants do not state sufficient facts to support any claim that the parking policy or traffic ordinances constituted a trespass. An action for trespass arises under New Jersey law upon the "unauthorized entry onto another's property, real or personal." *Pinkowski v. Twp. of Montclair*, 691 A.2d 837, 843 (N.J. Sup. Ct. App. Div. 1997). Plaintiffs cannot state a claim for trespass on a public road. *See Miller v. Pennsylvania-Reading Seashore Lines*, 187 A. 332, 333, 117 N.J.L. 152, 154 (Ct. of Errors & App. 1936). *See also Osborne v. Butcher*, 26 N.J.L. 308, 309-10 (N.J. 1857) (obstruction to right of way is not a trespass, but a trespass on the case); Am. Compl. ¶¶ 178, 265, 1193. Further, the allegations regarding interference with the Plaintiffs' right of way merely state conclusions and fail to meet the *Twombly/Iqbal* pleading standard. *Twombly*, 550 U.S. at 555.

Second, the Defendants are not liable for any alleged trespass by the school children. Under New Jersey law, a parent is not liable for the trespass of

his or her child. *McCauley v. Wood*, 2 N.J.L. 86, 1 Penning. 86 (N.J. 1806); *see also Starego v. Soboliski*, 93 A.2d 169, 170 – 71, 11 N.J. 29 (1952) (holding that master/servant relationship must be established for trespass liability). There is no reason that the Defendants' legal duty to supervise the school children would be greater than that of the parents. No particular wrongful act or violation of an accepted standard of school supervision is alleged.

Count 25, the trespass claim, will also be dismissed pursuant to Rule 12(b)(6).

### k. Violation of SESCA (Count 26)

Count 26 seeks to enjoin the Defendants from construction activities and compel them to restore lands "in and around" Plaintiffs' home, alleging a violation of the Soil Erosion and Sediment Control Act ("SESCA"). Am. Compl. ¶ 1200 (citing N.J.S.A. 4:24-39). SESCA contains no private right of action; under the statute, only the municipality or district may bring suit. N.J.S.A. 4:24-53; *accord N.J. Dep't of Env't Prot. and Energy v. T.E. Warren, Inc.*, 637 A.2d 591, 593 (N.J. Sup. Ct. App. Div. 1994). Count 26 will be dismissed for failure to state a claim.

### l. Disguised Tax Increase – Violation of N.J. Constitution Uniformity Clause (Count 29)

Count 29 of the Amended Complaint alleges a violation of the New Jersey Constitution Uniformity Clause. According to Count 29, the shift of the liabilities and costs relating to the supervision of children, removal of snow, ice, and debris, and the maintenance and repair of the new sidewalk are tantamount to an increase in the Plaintiffs' school or property tax. Am. Compl. ¶ 1213. The General Ordinances cited in the Complaint, 12-3.1 and 12-3.2, are applicable to all "owners and tenants" of property "abutting or bordering upon sidewalks." Tenafly, N.J. Gen. Ordinance ch. 12-3.1. If any such owner or tenant does not remove all snow and ice within twenty-four hours, after three

days' notice, the Superintendent may arrange for removal and add the cost added to the owner or tenant's property tax bill. Tenafly, N.J. Gen. Ordinance ch. 12-3.2. The Plaintiffs describe this requirement as "unfair and disproportionate treatment" and a "disguised property tax hike." Am. Compl. ¶¶ 1213 – 1215.

The Plaintiffs' allegations do not adequately plead a cause of action. The New Jersey Uniformity Clause requires that all real property be "assessed and taxed ... according to the same standard of value ... [and] at the general tax rate of the taxing district in which the property is situated...." N.J. Const., Art. VIII, § 1, ¶ 1(a); *Mobil Oil Corp. v. Twp. of Greenwich*, 22 N.J. Tax 1, 8 (N.J. Tax Ct. 2004) (citing same). Cases under the Uniformity Clause generally involve such matters as property assessments and classification of property. *See e.g. Twp. of West Milford v. Van Decker*, 576 A.2d 881 (N.J. 1990) (legality of spot assessments under Uniformity Clause); *Mobil Oil Corp.*, *supra* (distinguishing between real and personal property; only real property is subject to clause); *Twp. of Jefferson v. Morris Cnty. Bd. of Taxation*, 26 N.J. Tax 129 (N.J. Tax Ct. 2011) (use of equalization tables to assess property value).

The Plaintiffs have not pleaded facts showing that their property has been assessed or taxed on any basis that is not generally applicable. Their conclusory statement that the sidewalks on Downey Drive give rise to a "disproportionate" tax increase is without any factual support. The Ordinance, of course, applies to all owners and tenants in Tenafly whose properties abut or border sidewalks. And of course it is true that all properties are not identical or identically situated, and that the particular circumstances of a property may result in certain incidental costs. *See* Am. Compl. ¶¶ 1213–14. But the Plaintiffs do not adequately plead "unfair and disproportionate treatment" constituting a non-uniform tax in violation of the State Constitution's Uniformity Clause.

Count 29 will therefore be dismissed pursuant to Rule 12(b)(6).

## III.   CONCLUSION

For the reasons discussed above, the BOE's motion to dismiss the Am. Compl. is **DENIED** in part and **GRANTED** in part. It is **DENIED** as to Counts 2, 3, 10, 17, and 32, and it is **GRANTED** as to Counts 4, 6, 15, 16, 18, 20, 21, 22, 23, 25, 26, and 29.

An Order will be entered in accordance with this Opinion.

Dated:  January 2, 2014

**Hon. Kevin McNulty**
**United States District Judge**